173 Cal.App.4th 1474 (2009)
___ Cal.Rptr.3d ___
KEVIN FARR, Plaintiff and Appellant,
v.
CALIFORNIA COASTAL COMMISSION et al., Defendants and Respondents;
MICHAEL DOYLE et al., Real Parties in Interest and Respondents.
No. B204874.
Court of Appeals of California, Second District, Division Five.
April 9, 2009.
*1476 Manatt, Phelps & Phillips and Jill M. Pietrini for Plaintiff and Appellant.
Edmund G. Brown, Jr., Attorney General, John A. Saurenman, Assistant Attorney General, and Laurie R. Pearlman, Deputy Attorney General, for Defendants and Respondents.
Beverly Law Corporation and William Beverly for Real Parties in Interest and Respondents.

OPINION
ARMSTRONG, J. 
Respondent California Coastal Commission granted a coastal development permit to Michael and Kimberly Doyle. Appellant Kevin Farr filed a petition for writ of mandate, asking that the trial court order the commission to vacate its decision and nullify the permit. The trial court denied the writ, and this appeal followed. We affirm.

Facts
This case arises from the Doyles' plan to add a second story  an additional 10 feet of height  to their home in Redondo Beach.
The Doyles' home is on Esplanade Avenue, the first street inland of the ocean. Esplanade runs parallel to the ocean and is on the bluffs. It is part of a densely developed residential neighborhood. For the most part, it is lined on both sides with multiunit and single-family homes. However, an expansive, unobstructed public view of the shoreline begins just four lots south of the Doyles' house, where the west side of the street is undeveloped. The coastal commission deemed this "one of the best views of any coastal city."
There is also a view adjacent to the Doyles' house. A 20-foot-wide public accessway to the beach abuts the property on the north. Knob Hill Avenue, *1477 which forms a T with Esplanade, abuts the accessway and ends in a stairway to the beach. Knob Hill Avenue affords an open corridor to the beach and a public view.
The accessway was granted to the city by a previous owner of the Doyles' house, and means that the Doyles' house is on an unusually small lot.
The Doyles' house had one story below street level and one story above street level and partly blocked the public's view of the sea from Knob Hill Avenue. That is, from parts of Knob Hill Avenue, a member of the public could see sky and "part of the sea" over the Doyles' roof. The proposed additional story would increase the house's height from 13 feet to 23 feet. The addition would block more of the view from Knob Hill Avenue, but would not obstruct any public view from Esplanade or from the public stairway at the end of Knob Hill.
(1) A coastal development permit was required for the construction. Under the California Coastal Act of 1976 (Pub. Resources Code, § 30000 et seq.),[1] a city which has a certified local coastal program (LCP) has the authority to issue coastal development permits for projects in that city. (§ 30519; Schneider v. California Coastal Com. (2006) 140 Cal.App.4th 1339, 1344 [44 Cal.Rptr.3d 867].) Redondo Beach has a certified LCP and the Doyles applied to the city for their permit. The city found that the LCP did not identify the Doyle property for view protection, that the project would leave the house under the LCP's 30-foot height limit, and that the project was consistent with the LCP, and issued the permit.
(2) The coastal act allows an appeal to the coastal commission (§ 30603), and Farr filed an appeal. On such an appeal, the commission's jurisdiction is limited to determining whether the permit is consistent with the LCP and whether the permit violates coastal access policies. (Charles A. Pratt Construction Co., Inc. v. California Coastal Com. (2008) 162 Cal.App.4th 1068, 1074 [76 Cal.Rptr.3d 466].)
The commission found that an issue existed concerning the public's view from Knob Hill Avenue, and held a public hearing on the issue. After the hearing, in November 2004, the commission approved the permit, finding that the proposed construction was consistent with the LCP, which did not protect the view over the property, and would conform to the view protection provisions of the coastal act.
The commission found, inter alia, that "The affected view of the sea over the rooftop of the existing residential development is already partially *1478 obstructed by existing residential development, is not identified as a protected view corridor in the certified LCP, and therefore is not a significant public view that must be protected. . . . The public view affected by the proposed project is a limited view of a small part of the sea's horizon over an existing roof, and it can only be seen from Knob Hill Avenue and its sidewalks. Therefore, the public view that would be obstructed by the proposed project does not rise to the level of significance that would warrant the imposition of a special building limit on the applicants' thirty-foot wide lot."
The permit was issued on several conditions, including the detailed limitations on the landscaping and fencing the Doyles could install, and the condition that the Doyles remove a ficus tree, gas meter, and other improvements from the public accessway, finding that the removal of the tree and the improvements would "enhance and protect the public's view of the sea over the adjacent public accessway."
Farr filed this action for writ of mandate under Code of Civil Procedure section 1094.5. On such a petition, the trial court's "`inquiry . . . shall extend to the questions of whether the [commission] has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion.'" (La Costa Beach Homeowners' Assn. v. California Coastal Com. (2002) 101 Cal.App.4th 804, 814 [124 Cal.Rptr.2d 618].) Our review is the same as that of the trial court. (Ibid.) The trial court found no abuse of discretion and no action in excess of jurisdiction. (Fair trial was not an issue.)

Discussion

1. Section 30251

Section 30251 directs the commission that "The scenic and visual qualities of coastal areas shall be considered and protected as a resource of public importance. Permitted development shall be sited and designed to protect views to and along the ocean and scenic coastal areas, to minimize the alteration of natural land forms, to be visually compatible with the character of surrounding areas, and, where feasible, to restore and enhance visual quality in visually degraded areas. . . ." The LCP, too, incorporates this statute.
Citing the commission's finding that the view over the Dolyes' roof was not a significant public view which must be protected, Farr argues that the commission exceeded its jurisdiction by adding language to section 30251. In Farr's view, the commission added the word "significant" to the statute, so *1479 that it reads "Permitted development shall be sited and designed to protect significant views to and along the ocean . . . ."
In legal support, Farr cites the fact that the Legislature used the word "significant" in a number of other statutes in the coastal act. He argues that this means that the Legislature deliberately omitted the word in section 30251, and intended that every view be protected from every intrusion. In his view, once the commission found that the project would further restrict the public's limited view from Knob Hill Avenue, the commission had no choice but to deny the permit.
Farr also relies on Schneider v. California Coastal Com., supra, 140 Cal.App.4th 1339. In that case, the commission denied a permit on a finding that the project would affect the view of the coastline from boats in the ocean, offshore. The court found the commission had in effect added language to section 30251, changing the statute so that it protects not just views "to and along the ocean," as it says, but views "to and along, and from, the ocean." (140 Cal.App.4th at p. 1345, italics added.) The court found that "This expansive reading of the statute stretches the fabric too thin," and that "At this late date, it is unreasonable to assume that the Legislature meant to include ocean-based views to the shore when it enacted section 30251 30 years ago. Moreover, we believe that it is unreasonable to assume that the Legislature has ever sought to protect the occasional boater's views of the coastline at the expense of a coastal landowner." (Ibid.)
(3) After independent review (Schneider v. California Coastal Com., supra, 140 Cal.App.4th at pp. 1343-1344), we cannot find that the commission added words to section 30251, or that the Legislature intended that permits be denied for all projects which infringed in any way, no matter how minimally, on any view, no matter how limited, for anyone, from any vantage point, no matter the proximity of unlimited and expansive views. Instead, the Legislature intended balance, having declared that the "basic goals of the state for the coastal zone are to: [¶] (a) Protect, maintain, and, where feasible, enhance and restore the overall quality of the coastal zone environment . . . [¶] (b) Assure orderly, balanced utilization and conservation of coastal zone resources taking into account the social and economic needs of the people of the state." (§ 30001.5.)
(4) Section 30251 directs the commission to consider and protect scenic and visual qualities, and provides that "Permitted development shall be sited and designed to protect views . . . ." The commission did consider and protect. It reviewed alternate plans for expansion of the Doyles' house, and found that there was no workable alternative method, protected the view by limiting the fences and landscaping which could be used, and improved the *1480 view by making the permit contingent on removal of a large tree and other improvements in the accessway. The commission also found that an increase of 10 feet to the height of the house did not affect a protected view corridor, or indeed affect the public's view in any meaningful way. It did not insist that every scrap of the "limited view of a small part of the sea's horizon" that might be had over the Doyles' roof be fully preserved, but we do not see that section 30251 so required.

2. "Substantial evidence"
Under this heading, Farr makes three arguments, contending each time that the lack of substantial evidence for the commission's decision means that the commission abused its discretion.
One of these arguments is that the evidence before the commission supported a ruling denying the permit. We consider the contention only to say that it is a request that we reweigh the evidence, and does not state a cognizable argument on appeal. (La Costa Beach Homeowners' Assn. v. California Coastal Com., supra, 101 Cal.App.4th at p. 814.)
(5) Farr also bases an argument on the order that the Doyles remove the ficus tree from the public accessway. He contends both that removal of the tree did not enhance the view, and that the order cannot constitute substantial evidence because the tree should not have been on the accessway to begin with. "`Where it is claimed that the findings are not supported by the evidence . . ., abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record.' [Citation.]" (La Costa Beach Homeowners' Assn. v. California Coastal Com., supra, 101 Cal.App.4th at p. 814.) Farr has made no argument based on the record as a whole, and has thus not established a lack of substantial evidence.
Finally, Farr argues that the city, the commission, and the trial court erred in their interpretation of the LCP, when each of those entities found that the LCP did not protect the view over the Doyle house. He contends that the LCP does protect that view. This is not, of course, a challenge to substantial evidence, but to the interpretation of the LCP, a question of law for our independent review. (La Fe, Inc. v. County of Los Angeles (1999) 73 Cal.App.4th 231, 239-240 [86 Cal.Rptr.2d 217].)
Farr's argument relies on three sections of the LCP which describe or refer to the area in which the Doyles' house is located.
The LCP's description of shoreline access says that the blufftop walkway is an important part of the system of pedestrian access to the shoreline, and *1481 that the walkway provides an unobstructed view of the ocean to pedestrian and automobile travelers along Esplanade.
The blufftop walkway is also mentioned in the section describing coastal recreation. That section of the LCP also states that "more than half of the Redondo State Beach is open to direct public view from Esplanade which varies in elevation along its length and offers fine vantage points for viewing the beach and the ocean."
In determining that the LCP did not protect the view over the Doyles' house, the commission quoted the portions of the LCP which Farr relies on, and found that "the above-quoted descriptive text from the certified LCP describes the project area, the bluff top walkway, and the unobstructed bluff top view of the ocean along Esplanade, but the more specific policies of the LCP do not refer to protection of public views over the existing residential development."[2]
Farr's argument, which is that the LCP makes "express references" to the area, does nothing to establish that the commission (or the city, or the trial court) erred in its interpretation of the LCP. A reference is not a policy. The LCP elsewhere sets out policies, and the fact that Farr cites to none is telling.

3. Farr's motion to supplement the record in the trial court

In the trial court, Farr moved to supplement the record with photographs of the Doyles' house during demolition, during construction, and as rebuilt, that is, with pictures taken after the commission made its decision. The court denied the motion, finding that the foundation was inadequate, that the photographs were inadmissible because they were not before the commission, and that the photographs were cumulative and duplicative in that other photographs in the record established that the commission "clearly had a full understanding of what was going on."
Farr contends that the photographs were admissible under Code of Civil Procedure section 1094.5, subdivision (e), which provides that "Where the court finds that there is relevant evidence that, in the exercise of reasonable diligence, could not have been produced or that was improperly excluded at the hearing before respondent, it may enter judgment as provided in subdivision (f) remanding the case to be reconsidered in the light of that evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit the evidence at the hearing on the writ without remanding the case."
*1482 Farr's position is that the photographs could not have been produced at the hearing because construction had not yet begun, and that the drawings and photographs which the coastal commission had before it did not show the "real impact" of the project.
The standard of review is abuse of discretion (Pomona Valley Hospital Medical Center v. Superior Court (1997) 55 Cal.App.4th 93, 101 [63 Cal.Rptr.2d 743]), and we find none. It would be peculiar indeed if the commission, having issued a permit, could reach a different decision if it disliked the project once it was built in compliance with the permit. At any rate, the record is replete with photographs of the area with clear indications of the location and effect of the proposed construction. We see no abuse of discretion in the trial court finding that the additional photographs would be cumulative.

Disposition
The judgment is affirmed. Respondents to recover costs on appeal.
Turner, P. J., and Mosk, J., concurred.
NOTES
[1] All further statutory references are to the Public Resources Code, unless otherwise indicated.
[2] The commission also wrote that "if the city or the concerned parties believe there should be a protected view corridor over this area, the proper forum for imposing protection is the LCP amendment process."